UNITED STATES DISTRICT COURT
for the
Western District of Michigan
Southern Division

|  |  |
|---|---|
| ) | Case No.    1:26-cv-1562 |
| ) |  |
| HAYLEE J. WARD ) |  |
| *Plaintiff* ) |  |
| ) | JURY TRIAL DEMAND |
| ) |  |
| **-v-** ) |  |
| ) |  |
| ) |  |
| ) |  |
| REGION IV AREA AGENCY ON AGING, INC., ) |  |
| CHRISTINE VANLANDINGHAM, STEFANIE ) |  |
| MURPHY, EMILY MARSHALL, LYNN BERLIN,) |  |
| JENNIFER MILLER AND THERESA ULRICH ) |  |
| *Defendants.* ) |  |

COMPLAINT

NOW COMES the Plaintiff, Haylee Ward, an individual, by and through her attorney,

Analisa Parker, in this original proceeding, and for her complaint against the defendants Region

IV Area Agency on Aging, Inc., Christine Vanlandingham, Stephanie Murphy, Emily Marshall,

Lynn Berlin, Jenni Miller and Theresa Ulrich, alleges as follows:

THE PARTIES TO THE COMPLAINT

1.  The Plaintiff is an individual, and her domicile is located in the City of Jones, located in

    Cass County within the state of Michigan.

2.  The Plaintiff is informed and believes that defendant Region IV Area Agency on Aging,

    Inc., is a nonprofit organized in the State of Michigan with its principal place of business

    located at 2900 Lakeview Ave. St. Joseph, MI 49085, located in Berrien County.

    Defendant Region IV Area Agency on Aging, Inc. (hereinafter "RIVAAA") employed

    Plaintiff from March 28, 2022, until May 15, 2024, and employs over 15 employees.

Page 1 of 16

3. The Plaintiff is informed and believes that defendant Christine Vanlandingham, is an individual who resides at 62722 54th Avenue, Hartford, MI 49057, located in Van Buren County. The Plaintiff is informed and believes that defendant Vanlandingham is the Chief Executive Officer for defendant RIVAAA but is also being sued in an individual capacity.

4. The Plaintiff is informed and believes that defendant Stefanie Murphy is an individual who resides at 345 Nickerson Avenue, Benton Harbor, MI 49022, located in Berrien County. The Plaintiff is informed and believes that defendant Murphy is a MI Choice Manager for defendant RIVAAA but is also being sued in an individual capacity.

5. The Plaintiff is informed and believes that defendant Emily Marshall is an individual who resides at 2618 Thayer Drive, St. Joesph, MI 49085, located in Berrien County. The Plaintiff is informed and believes that defendant Marshall is a Care Manager Supervisor for defendant RIVAAA but is also being sued in an individual capacity.

6. The Plaintiff is informed and believes that defendant Lynn Berlin is an individual who resides at 2912 Carsten Avenue, Kalamazoo, MI 49004, located in Kalamazoo County. The Plaintiff is informed and believes that defendant Berlin is the Continuum of Care Services Manager for defendant RIVAAA but is also being sued in an individual capacity.

7. The Plaintiff is informed and believes that defendant Jennifer Miller is an individual who resides at 35886 Riverview Drive, Paw Paw, MI 49079, located in Van Buren County. The Plaintiff is informed and believes that defendant Miller was the Quality and Compliance Officer for defendant RIVAAA, for the period the offenses took place and is

now currently an Eligibility Specialist for defendant RIVAAA but is also being sued in an individual capacity.

8. The Plaintiff is informed and believes that defendant Theresa Ulrich is an individual who resides at 820 North Niles Avenue, Apartment A, South Bend, IN 46617, located in St. Joseph County. The Plaintiff is informed and believes that defendant Ulrich is the Chief Operating Officer for defendant RIVAAA but is also being sued in an individual capacity.

BASIS FOR JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1367. The specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case are as follows and include state tort claims:

A. This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C §§ 2000e to 2000e-17, as amended.

B. This action is brought for wrongful termination pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C §§ 2000e to 2000e-17, as amended, and the Fair Labor Standards Act of 1938, as codified, 29 U.S.C §§ 201 – 219, as amended.

C. This action is brought for hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C §§ 2000e to 2000e-17, as amended, and the Fair Labor Standards Act of 1938, as codified, 29 U.S.C §§ 201 – 219, as amended.

D.  This action is brought for retaliation pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C §§ 2000e to 2000e-17, as amended and the Fair Labor Standards Act of 1938, as codified, 29 U.S.C §§ 201 – 219, as amended.

E.  This action is brought for discrimination in employment pursuant to the Pregnancy Discrimination Act of 1978, as codified, 42 U.S.C §§ 2000e et seq. as amended.

F.  This action is brought for hostile work environment in employment pursuant to the Pregnancy Discrimination Act of 1978, as codified, 42 U.S.C §§ 2000e et seq. as amended.

G.  This action is brought for retaliation in employment pursuant to the Pregnancy Discrimination Act of 1978, as codified, 42 U.S.C §§ 2000e et seq. as amended.

H.  This action is brought for wrongful termination in employment pursuant to the Pregnancy Discrimination Act of 1978, as codified, 42 U.S.C §§ 2000e et seq. as amended.

I.  This action is brought for discrimination in employment pursuant to Elliott-Larsen Civil Rights Act (ELCRA) (MCL § 37.2101 et seq. as amended.

J.  This action is brought for wrongful termination pursuant to Elliott-Larsen Civil Rights Act (ELCRA) (MCL § 37.2101 et seq. as amended.

K.  This action is brought for hostile work environment pursuant to Elliott-Larsen Civil Rights Act (ELCRA) (MCL § 37.2101 et seq. as amended.

L.  This action is brought for retaliation pursuant to Elliott-Larsen Civil Rights Act (ELCRA) (MCL § 37.2101 et seq. as amended.

M.  This action is brought for wrongful termination pursuant to Whistleblowers' Protection Act (WPA) (MCL § 15.361 et seq. as amended.

N.  This action is brought for hostile work environment pursuant to Whistleblowers' Protection Act (WPA) (MCL § 15.361 et seq. as amended.

O.  This action is brought for retaliation pursuant to Whistleblowers' Protection Act (WPA) (MCL § 15.361 et seq.

P.  This action is brought for hostile work environment pursuant to the Family and Medical Leave Act of 1993, Pub. L. 103–3, 107 Stat. 6, as amended (FMLA), 29 U.S.C. §§ 2601–2654, as amended and 29 C.F.R. § 825, as amended.

Q.  This action is brought for retaliation pursuant to the Family and Medical Leave Act of 1993, Pub. L. 103–3, 107 Stat. 6, as amended (FMLA), 29 U.S.C. §§ 2601–2654, as amended and 29 C.F.R. § 825, as amended.

R.  This action is brought for wrongful termination pursuant to the Family and Medical Leave Act of 1993, Pub. L. 103–3, 107 Stat. 6, as amended (FMLA), 29 U.S.C. §§ 2601–2654, as amended and 29 C.F.R. § 825, as amended.

S.  This action is brought under Michigan law in defamation pursuant to MCL Section 600.2911.

T.  This action is brought for Michigan common law for intentional infliction of emotional distress.

U.  This action is brought for Michigan common law in negligent hiring or retention.

10. Plaintiff originally submitted a complaint to the Michigan Civil Rights Commission who in turn referred the charge to the Equal Employment Opportunity Commission. Plaintiff filed the charge with the Equal Employment Opportunity Commission for the matter on

December 10, 2024, filed an amended charge on August 24, 2025, and a final amended charge on February 13, 2026.

11. The Equal Employment Opportunity Commission issued a "Notice of Rights to Sue" letter, which Plaintiff received on April 2, 2026, (Please see Exhibit A), due to said letter being issued, Plaintiff has exhausted all federal administrative remedies.

12. Venue is proper in this judicial district pursuant to 28 USC § 1391 because a substantial portion of the events giving rise to the claims occurred in Berrien County, Michigan where defendant's, RIVAAA, principal place of business is also located.

STATEMENT OF FACTS

13. Plaintiff is a member of a protected class because she is a woman, her assigned sex at birth was female and she has a female reproductive system.

14. On March 28, 2022, Plaintiff was hired by defendant RIVAAA.

15. On March 27, 2023, defendant Marshall, Plaintiff's supervisor at the time, scored Plaintiff with all 4s and 5s on her yearly review on a scale of 1 to 5. Other employees also spoke highly of Plaintiff within said review.

16. Between March 2023 and July 2023, Plaintiff experienced multiple occasions of sexual harassment by John Marshall, defendant Marshall's husband, and was assigned a new supervisor.

17. On September 5, 2023, defendant Murphy became Plaintiff's supervisor.

18. On October 09, 2023, Plaintiff received a monetary raise, in the amount of $1.93.

19. On November 09, 2023, Plaintiff's job title and responsibilities are confirmed in writing with 8 essential duties and responsibilities listed.

20. In October of 2023, Plaintiff becomes pregnant but does not make it publicly known at work.

21. In February 2024, it becomes known within the workplace that Plaintiff is pregnant.

22. After it becomes known in the workplace that Plaintiff is pregnant, the treatment of Plaintiff changes significantly and defendant Murphy starts treating Plaintiff in a hostile manner, examples of said treatment, include but are not limited to, Plaintiff not being allowed to have meetings alone anymore, Plaintiff being micromanaged, Plaintiff being given unnecessary tasks that could knowingly cause her, and possibly her unborn baby, emotional and physical harm, Plaintiff being given unnecessary tasks as an inconvenience, at the end of the work day defendant Murphy told Plaintiff she was required to return to the office for a meeting even though defendant Murphy knew she was going to cancel said meeting prior to making the request and in turn cancelled it upon Plaintiff's return to the office and Plaintiff being addressed in an aggressive manner.

23. On March 18, 2024, Plaintiff's workload was significantly increased with 5 additional essential duties and new responsibilities being added.

24. On March 25, 2024, Plaintiff is put on a work plan created by defendant Ulrich, to "set metrics for Eligibility Specialist to meet service line goals," with requirements that could not be met. Later this is used as grounds for her termination even though it was not possible to achieve.

25. On March 27, 2024, Plaintiff files a complaint with Heather Stombaugh, the current Human Resource Officer (hereinafter "HR") against defendant Murphy for a hostile work environment.

26. On March 28, 2024, Plaintiff does not receive her yearly review.

27. On April 18, 2024, Plaintiff officially hands in FMLA application.

28. On April 18, 2024, all meetings with Plaintiff were cancelled but meetings were still being held with other members of Plaintiff's team.

29. Between April 24 – 26, 2024, Plaintiff was on sick leave due to having an upper respiratory infection while being 7 months pregnant. Plaintiff notified defendant Murphy of being sick on the 24th and a team member notified defendant Murphy that Plaintiff was going to the emergency room on the 25th.

30. On April 26, 2024, defendant Murphy falsely documents Plaintiff as a no call no show for April 24 – 26, although Plaintiff was paid sick leave for these days. This false documentation is later used to justify Plaintiff's termination.

31. On April 30, 2024, Plaintiff's doctor's office submits FMLA paperwork showing Plaintiff will need to take maternity leave from June 15, 2024, to July 24, 2024.

32. On May 8, 2024, investigation into defendant Murphy for hostile work environment recommends disciplinary action be taken against Plaintiff and not defendant Murphy, although this is never communicated to Plaintiff.

33. On May 9, 2024, a workplace baby shower is held for Plaintiff and although standard practice to pay for the cake for workplace baby showers, defendant RIVAAA through its acting management refuses to pay for the cake.

34. On May 10, 2024, defendants Uhrich, Vanlandingham and Murphy held a meeting with HR where they brought up and recommend Plaintiff's termination. Defendants Vanlandingham and Uhrich made false statements in recommendation of Plaintiff's termination. Defendant Murphy claimed she did not feel safe to manage Plaintiff.

Defendants Marshall and Berlin stopped by the meeting also making false statements regarding the character of Plaintiff to support the termination of Plaintiff.

35. On May 10, 2024, an investigation was opened and closed, all in the same day, with a recommendation of Plaintiff's termination.

36. During May of 2024 defendant Miller made false written reports regarding Plaintiff's work performance to support the termination of Plaintiff.

37. HR recommended Plaintiff not be terminated due to her pregnancy. HR did not agree with the reasons being presented to terminate Plaintiff and found the information presented by the defendants to be false.

38. On May 15, 2024, exactly one (1) month prior to Plaintiff's due date and start of FMLA leave, Plaintiff is terminated due to "workplace incivility and bullying behavior," and is not allowed to take the agreement not to sue defendant RIVAAA, with severance pay, with her, for an attorney's review, unless she signs it.

39. At no point, prior to May 15, 2024, was Plaintiff ever reprimanded by any defendant or any of defendant's employees.

40. On May 20, 2024, Plaintiff rescinds the severance agreement and agreement not to sue.

41. On May 20,2024, HR sent an email to defendants requesting information to support Plaintiff's termination.

42. Between May 21 and 23 of 2024, defendants Miller, Berlin, Mashall and Murphy all forward information to support Plaintiff termination some dating back to December 7, 2022, none of which was previously relied on for the determination of Plaintiff's termination.

43. On May 23, 2024, Plaintiff's personnel file is requested pursuant to Bullard-Plawecki Employee Right to Know Act and all evidence pertaining to this matter is requested to be preserved.

44. On June 1, 2024, Plaintiff goes into labor and delivers baby two (2) weeks early.

45. At least two (2) former employees of defendant RIVAAA have reported being treated in a hostile manner after making it known in the workplace that they needed to take leave for serious medical reasons. In both cases the hostile work environment eventually led them to quitting.

46. Other employees acted in the exact same manner as Plaintiff throughout her employment and were not treated in a hostile manner nor were they terminated.

47. Other employees had multiple complaints filed against them by the community that is served by the defendant RIVAAA and had other employees complain and avoid them, and at no point were they treated in a hostile manner nor were they terminated. As of the date of this complaint they are still employed by defendant RIVAAA.

<u>COUNT I UNLAWFUL DISCRIMINATION BASED ON GENDER AND PREGNANCY – AGAINST ALL DEFENDANTS</u>

48. Plaintiff repeats and realleges the above listed paragraphs as if fully set forth herein.

49. Under the laws of the United States of America, as stated in paragraph 9A, 9E and 9I above, it is unlawful to for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

50. Plaintiff was discriminated against due to her sex, that she was pregnant and that she attempted to exercise her rights under the FMLA.

51. Plaintiff was discriminated against as she was treated unequal to employees who were not pregnant and did not need to take leave for medical reasons. She was monitored far more than other employees, was given unnecessary tasks that were not given to other employees and ultimately was terminated for false reasons and other discriminatory actions listed above.

52. Defendants are liable for its employee's behaviors as they were working within the scope of their employment and HR was informed and no correction or termination took place regarding the employees committing said unlawful behaviors during Plaintiff's employment.

53. Defendants have discriminated against at least two other employees in a similar manner.

54. Defendants may still be operating in the same discriminatory manner.

## COUNT II HOSTILE WORK ENVIRONMENT BASED ON GENDER, PREGNANCY AND USE OF FMLA – AGAINST ALL DEFENDANTS

55. Plaintiff repeats and realleges the above listed paragraphs as if fully set forth herein.

56. As described above, defendants subjected Plaintiff to a hostile work environment based on her gender, pregnancy and attempt to utilize FMLA, in violation of the laws stated in paragraphs 9C, 9F, 9K, 9N and 9P above.

57. Defendants' conduct stated in the facts above is sufficient to amount to a hostile environment.

58. All the foregoing conduct was unwelcome, based on Plaintiff's gender, pregnancy and need to use FMLA, and sufficiently severe to alter the conditions of Plaintiff's employment and create an abusive atmosphere

59. As a result of defendant's conduct, Plaintiff suffered emotional pain and suffering and physical manifestations of her mental suffering. Even causing Plaintiff to go into early labor.

## COUNT III RETALIATION BASED ON REPORTING UNLAWFUL ACTS AND USE OF FMLA– AGAINST ALL DEFENDANTS

60. Plaintiff repeats and realleges the above listed paragraphs as if fully set forth herein.

61. As described above, defendants unlawfully retaliated against Plaintiff due to her attempt to utilize FMLA leave and reporting a hostile work environment based on her gender and pregnancy in violation of the laws stated in paragraphs 9D, 9G, 9L, 9O and 9Q above.

62. Defendants unlawfully retaliated against Plaintiff by, terminating her for reporting unlawful acts and exercising her rights under the FMLA.

## COUNT IV WRONGFUL TERMINATION BASED IN DISCRIMINATION, RETALIATION, AND USE OF FMLA– AGAINST ALL DEFENDANTS

63. Plaintiff repeats and realleges the above listed paragraphs as if fully set forth herein.

64. Under the laws of the United States of America, it is unlawful to terminate an individual's employment for unlawful reasons as stated in the laws referenced in paragraphs 9B, 9H, 9J, 9M and 9R above.

65. Defendants wrongfully terminated Plaintiff on May 15, 2024, as her termination was based on her gender/sex, pregnancy, her attempt to utilize the FMLA and her reporting of a hostile work environment based in discrimination.

66. Defendant currently employs individuals who had complaints filed against them by clients and even committed acts that were claimed to be grounds for Plaintiff's termination. Plaintiff has had no complaints filed against her by clients.

67. Plaintiff performed better within her duties than employees that are still currently employed by defendant.

<u>COUNT V NEGLIGENT HIRING/RETENTION – AGAISNT DEFENDANT RIVAAA</u>

68. Plaintiff repeats and realleges the above listed paragraphs as if fully set forth herein.

69. Under the laws of the state of Michigan, as stated in paragraph 9 above, it is unlawful to retain an employee if you knew or should have known the employee was likely to break the law which results in harm to others.

70. Prior to Plaintiff discrimination and termination another employee put in leave for FMLA and was treated so poorly by defendant Murphy they quit. Defendant was aware of said behaviors and decisions by management. As defendant Vanlandingham assisted in said decisions and behaviors.

71. Defendant RIVAAA was put on notice by Plaintiff of defendant Murphy's illegal behavior.

72. Due to retaining employees who were openly breaking the law Plaintiff was terminated.

73. HR even reported the illegal behaviors to defendant Miller, to no avail.

74. In June of 2024, HR's position was terminated as a whole and HR terminated as an individual as well.

75. To date, it is highly likely the same discriminatory practices are taking place.

COUNT VI DEFEMATION BASED IN SLANDER AND LIBEL– AGAINST DEFENDANTS

VANLANDINGHAM, MILLER, MARSHALL, MURPHY, BELRIN AND ULRICH

76. Plaintiff repeats and realleges the above listed paragraphs as if fully set forth herein.

77. Under the laws of the state of Michigan, it is unlawful to provide false information verbally or in writing that defames an individual which results in actual damages.

78. On May 10, 2024, Defendants Vanlandingham, Ulrich, Marshall, Murphy and Berlin made oral and written false claims regarding Plaintiff's work performance and character, and recommended she be terminated from employment.

79. In May of 2024, Defendants Miller and Murphy made false reports regarding Plaintiff's work performance and recommend she be terminated from employment.

80. All false statements were made to a third party, that party being HR and resulted in the termination of Plaintiff.

COUNT VII INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – AGAINST

DEFENDANTS VANLANDINGHAM, MILLER, MARSHALL, MURPHY, BELRIN AND

ULRICH

81. Plaintiff repeats and realleges the above listed paragraphs as if fully set forth herein.

82. Under the laws of the state of Michigan, it is unlawful to intentionally inflict emotional distress on another.

83. The defendants intentionally provided false information to HR to cause Plaintiff to be terminated from employment while she was eight (8) months pregnant, just thirty (30) days prior to her due date to give birth to her first child.

84. Defendants knew this would cause permanent irreparable harm to Plaintiff and itended it to do so.

85. Defendants treated Plaintiff in a hostile manner and discriminated against her due to her being a pregnant woman, needing to utilize the FMLA and standing up for herself and reporting the hostile work environment to HR.

86. Defendants conduct was intentional, reckless and in deliberate disregard of the high degree of probability that emotional distress would result to Plaintiff.

87. Defendants' motive in conducting this intentional and tortious conduct was to force Plaintiff to quit her job and to cause her serious emotional distress and harm to her professional reputation.

88. Defendants' behavior led to the wrongful termination of Plaintiff.

89. Defendants' behavior caused Plaintiff to go into early labor.

90. As a direct and proximate result of the aforesaid tortious conduct and actions, Plaintiff has suffered and will continue to suffer severe emotional distress.

91. Plaintiff was humiliated due to the false reasons claimed for her termination and how she was terminated.

92. Defendants' conduct was motivated by maliciousness, spite, ill will, vengeance, and a deliberate intent to harm Plaintiff. Accordingly, Plaintiff is entitled to and demands exemplary damages.

## DAMAGES AND RELIEF

93. Plaintiff repeats and realleges the above listed paragraphs as if fully set forth herein.

94. Plaintiff seeks Actual Damages for back pay in the amount of $89,400.00, to be adjusted at the date of judgment.

95. Plaintiff seeks Liquidated Damages in the amount of $89,400.00, to be adjusted at the date of judgment.

96. Plaintiff seeks Actual Damages due to actual costs incurred and losses due to the violation in the amount of $121,720.25, to be adjusted at the date of judgment.

97. Plaintiff seeks Punitive Damages in the amount of $300,000.

98. Plaintiff seeks Pain and Suffering Damages in the amount of $608,601.25.

WHEREFORE, the Plaintiff prays that this Court enters a judgment against the defendants in the amount of $1,209,121.25, jointly and severally, plus interest, together with reasonable attorneys' fees, legal fees, filing fees and any other relief this court sees as fit. This Plaintiff also demands a jury trial in said matter if judgment is not entered. Plaintiff requests all hearings prior to trial be held by video due to the travel to any court location being unduly birdsome for Plaintiff, Plaintiff's attorney and defendants in the matter.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Signature of Attorney for Plaintiff: s/ Analisa Parker        Date of signing: May 11, 2026

Printed Name of Attorney for Plaintiff: Analisa Parker
Bar Number: TN Bar No. 041644 / IL Bar No. 6321264
Street Address: 768 Hunters Crossing Ln.
City, State and Zip Code: Springfield TN, 37172
Telephone Number: (269) 325-9123
E-mail Address: analisa.parker@yahoo.com